IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRANDEIS UNIVERSITY,<br><br>            Plaintiff,<br><br>      v.<br><br>BIO-RAD LABORATORIES, INC.<br><br>            Defendant. | Civil Action No. 1:25-cv-12780-AK<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT BIO-RAD LABORATORIES, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 1

    A.    Brandeis Fails To State A Claim For Breach of Contract (Count I) and Declaratory Judgment (Count II) ................................................................................................. 1

        1.    Brandeis fails to state a claim that Bio-Rad's products are "Licensed Products" to which Sections 4.1 and 4.5 apply ........................................................................... 1

        2.    Brandeis fails to state a claim that Sections 6.3 and 6.4 apply to Bio-Rad's Cross-License Agreement with 10x ................................................................................... 4

        3.    Brandeis fails to state a claim that Bio-Rad engaged in sublicensing activity to which Section 2.2 applies ...................................................................................... 4

        4.    Brandeis fails to state a claim that Bio-Rad failed to use commercially reasonable best efforts under Section 3.1 ........................................................................... 5

        5.    Brandeis's claims for breach of the limited audit provision of Section 4.4 must be dismissed as a matter of law ................................................................................. 7

    B.    Brandeis Fails to State a Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III) .................................................................................... 9

    C.    Brandeis's Claim for Violation of M.G.L. Ch. 93A § 2 Fails as a Matter of Law (Count IV) ........................................................................................................................... 9

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ...................................................................................................2

*CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*,
  768 F. Supp. 3d 183 (D. Mass. 2025) .....................................................................................10

*CustomMade Ventures Corp. v. Sentinel Ins. Co.*,
  No. CIV.A. 11-10365-DPW, 2012 WL 4321060 (D. Mass. Sept. 17, 2012) ...........................8

*Daniels v. Alvaria, Inc.*,
  No. 23-CV-10419-DJC, 2024 WL 758172 (D. Mass. Feb. 23, 2024) .......................................9

*Douglas v. Hirshon*,
  63 F.4th 49 (1st Cir. 2023) ........................................................................................................3

*Najas Realty, LLC v. Seekonk Water Dist.*,
  821 F.3d 134 (1st Cir. 2016) .....................................................................................................4

*Petricca Dev. Ltd. P'ship v. Pioneer Dev. Co.*,
  214 F.3d 216 (1st Cir. 2000) .....................................................................................................5

*Progenics Pharms., Inc. v. MIM Software Inc.*,
  762 F. Supp. 3d 100 (D. Mass. 2025) ...................................................................................2, 4

*Talk Radio Network Enters. v. Cumulus Media Inc.*,
  271 F. Supp. 3d 1195 (D. Or. 2017) .........................................................................................7

*Tendyne Holdings, Inc. v. Abott Vascular, Inc.*,
  C.A. No. 18-1070-CFC, 2019 WL 2717857 (D. Del. June 28, 2019) ..................................6, 7

*Waleyko v. Phelan*,
  146 F.4th 89 (1st Cir. 2025) ......................................................................................................6

**Statutes**

M.G.L. Ch. 93A § 2 .........................................................................................................................9

**I.     INTRODUCTION**

Brandeis admits it does not have a factual basis to state a claim that Bio-Rad has breached any provision of the parties' License Agreement. Instead, Brandeis alleges that it has a right to audit Bio-Rad records that could hypothetically yield information that could hypothetically give rise to claims of breach. Brandeis's audit claim relies on a contractual interpretation that stretches the plain terms of the Agreement to absurdity, and should be dismissed for that reason. But even if Brandeis's audit claim could survive a motion to dismiss (it should not), an alleged breach of that provision does not provide a sufficient basis to allege breach of any other provision, and those claims should be dismissed for failure to state a claim upon which relief can be granted.

**II.    ARGUMENT**

    **A.    Brandeis Fails To State A Claim For Breach of Contract (Count I) and Declaratory Judgment (Count II)**

        1.    <u>Brandeis fails to state a claim that Bio-Rad's products are "Licensed Products" to which Sections 4.1 and 4.5 apply</u>

Count I of Brandeis's Amended Complaint claims "if Bio-Rad has sold Licensed Products," then "it has breached its obligations to report such sales and pay royalties per Sections 4.1 and 4.5 of the Agreement." (Doc. No. 46 ¶ 77; *see also id.*, 17 (requesting relief in the form of "[d]amages for Bio-Rad's failure to pay royalties, if the audit shows that unpaid royalties are owed").) The Amended Complaint thus makes a conditional claim that arises only "if Bio-Rad has sold Licensed Products." (Doc. No. 46 ¶ 77.) But the Amended Complaint does not plead any factual allegations to make that necessary precondition plausible. Under the Agreement, a "Licensed Product" is any product that "absent the licenses granted" in the Agreement "would … infringe" a claim of the licensed Brandeis patents. (Doc. No. 46-1 § 1.6.) To state a claim that Bio-Rad "has sold Licensed Products" that would trigger royalty or reporting obligations, Brandeis

1

therefore must plead factual allegations sufficient to state a claim that Bio-Rad has sold products that "absent the licenses granted" in the Agreement would "infringe" the licensed Brandeis patents.

To state a claim that Bio-Rad has sold products that would infringe the licensed patents absent the license, Brandeis must plead "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).[1]  The Amended Complaint does not come close to meeting that standard, alleging only that there are "similarities" between Bio-Rad's promotional materials and the licensed patents.  (Doc. No. 46 ¶ 52.)  That is not enough to articulate how or why it is plausible that any Bio-Rad product infringes any claim of the Brandeis patents, and therefore not enough to state a claim for relief.  *See, e.g.*, *Progenics Pharms., Inc. v. MIM Software Inc.*, 762 F. Supp. 3d 100, 117 (D. Mass. 2025) (dismissing infringement claim where complaint failed to make allegations as to how the accused product met the claims).

In its opposition brief, Brandeis argues that its claim for royalties under Sections 4.1 and 4.5 should survive based on other allegations describing (a) Bio-Rad's development progress report to Brandeis and (b) Bio-Rad's refusal to grant Brandeis's broad "audit" requests.  (Doc. No. 51 at 6–7.)  Neither supports Brandeis's claim.  Bio-Rad's progress report states only that Bio-Rad is complying with its contractual obligation to "develop and commercialize *new* products and services," which may in the future practice the licensed products.  (Doc. No. 46-2 (emphasis added).)  Brandeis's "audit" requests demand extensive confidential technical and business

---

[1] Moreover, Brandeis already has access to extensive information regarding Bio-Rad's products, including public technical information, the commercial products themselves, and claim charts Bio-Rad provided demonstrating the products do not infringe, including because one of the accused products has not been sold for over 12 years. (*See* Doc. No. 48, 4–5; *see also* Doc. No. 51, Section I.B.)  Tellingly, Brandeis's Amended Complaint does not reference any of this information to support its claims.

information regarding Bio-Rad products that Bio-Rad has sold—or stopped selling—since before it entered the License Agreement. Bio-Rad's refusal to grant Brandeis's baseless "audit" demands does not support any reasonable inference that Bio-Rad sells products that would infringe the Brandeis patents. Indeed, Brandeis admits that these factors support only a "reasonable inference" that Bio-Rad either (a) sells Licensed Products or (b) does *not* sell Licensed products. When a claim *or its opposite* could both be reasonably inferred from the same set of facts, the pleaded facts are not enough to support a claim for relief. Even when claims are pleaded in the alternative, they still must be pleaded with sufficient factual basis "to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022)).

  Brandeis alternatively argues that it need not plead facts sufficient to state a claim that Bio-Rad has sold "Licensed Products"—i.e., products that would infringe the licensed patents absent the license—because "what Brandeis has alleged is that Bio-Rad is failing to produce records necessary to confirm whether Bio-Rad is or is not producing Licensed Products." (Doc. No. 51, 7.) That is not what the Amended Complaint says. The Amended Complaint expressly claims "[d]amages for Bio-Rad's failure to pay royalties" under Sections 4.1 and 4.5 of the Agreement. (Doc. No. 46 ¶ 77; *see also* Doc. No. 51, 6 (arguing "Brandeis has sufficiently pled that Bio-Rad breached Sections 4.1 and 4.5 by failing to pay royalties on licensed products").) Brandeis cannot avoid the pleading standard for its damages claim merely by arguing that all "information necessary to verify whether any products practice the Licensed IP is 'peculiarly within' Bio-Rad's possession and control." (Doc. No 51, 6.) Rule 8 requires well-pleaded factual allegations sufficient to state a claim for relief. Where the claim is that Bio-Rad sells products that would infringe the licensed patents but for the license, Brandeis must plead facts to articulate why

3

products sold by Bio-Rad infringe the licensed patents. Its failure to do so requires dismissal. *See Progenics Pharms.*, 762 F. Supp. 3d at 117.

> 2. Brandeis fails to state a claim that Sections 6.3 and 6.4 apply to Bio-Rad's Cross-License Agreement with 10x

Section 6 of the Agreement applies to enforcement of the licensed Brandeis patents. Those provisions apply only under certain conditions—i.e., when Bio-Rad intends to file suit asserting the Brandeis patents (Section 6.3), and when Bio-Rad is engaged in an active infringement suit asserting them (Section 6.4). (*See* Doc. No. 46-1 §§ 6.3, 6.4.) Neither situation applies here.

Brandeis admits it has no basis to believe that Bio-Rad intended to assert the Licensed IP, and that whether that factual predicate was met "*remains a mystery* to Brandeis." (Doc. No. 51, 11 (emphasis added).) A "mystery" is not sufficient to state a claim for which relief can be granted. *See Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 146 (1st Cir. 2016). Brandeis's claim for breach under Section 6.3 must therefore be dismissed.

Similarly, Section 6.4 applies only in cases where Bio-Rad has actually asserted the Brandeis patents in an "infringement suit." (Doc. No. 46-1 § 6.4 ("No settlement, consent, judgment or other voluntary final disposition of an *infringement suit* may be entered into without the written consent of the other party . . .").) Brandeis does not allege this condition is met. Nor could it. As the public litigation dockets between Bio-Rad and 10x show, Bio-Rad never asserted the Brandeis patents in an infringement suit against 10x. Brandeis's claim for breach under Section 6.4 must therefore be dismissed.

> 3. Brandeis fails to state a claim that Bio-Rad engaged in sublicensing activity to which Section 2.2 applies

Section 2 of the Agreement governs Bio-Rad's rights and obligations with respect to sublicenses of the Brandeis patents. Brandeis admits its claims are based not on a sublicense but on an agreement between Bio-Rad and non-party 10x Genomics ("10x") whereby 10x received a

4

contractual option to execute a sublicense agreement at a later date subject to the terms of the Brandeis-Bio-Rad Agreement. (Doc. No. 46 ¶ 39; Doc. No. 51, 8.)

Brandeis attempts to invoke Section 2.2 by conflating an *option* to sublicense with an executed sublicense. That conflation is insupportable. As Brandeis admits, "it is generally accepted that a sublicense is 'a contract granting to a third party a portion or all of the rights granted to the licensee under an original license.'" (Doc. No. 51, 9.) Brandeis does not allege that the option provision grants 10x any rights granted to Bio-Rad under the original license. By its plain terms, the option grants 10x only a contractual right against Bio-Rad to execute a future sublicense agreement. Only upon execution of that agreement would 10x obtain any rights to practice the patent. The option agreement as it stands does not transfer any IP rights, does not create any rights or obligations in relation to Brandeis, and does not grant 10x any rights that Bio-Rad holds under the original license Agreement. *Cf. e.g.*, *Petricca Dev. Ltd. P'ship v. Pioneer Dev. Co.*, 214 F.3d 216, 221–22 (1st Cir. 2000) (in the real property context, finding an "option to purchase" does not create a property interest, and that "options to purchase are more aptly analogized to contractual rights which may be converted into property interests at the election of the optionee"). Therefore, Brandeis's claim for breach of Section 2.2 must be dismissed.

### 4. Brandeis fails to state a claim that Bio-Rad failed to use commercially reasonable best efforts under Section 3.1

Section 3.1 of the Agreement requires that Bio-Rad "shall itself, or through its Sublicensees, use its commercially reasonable best efforts to develop and make commercially available Licensed Products for commercial sales." (Doc. No. 46-1 § 3.1.) The Agreement grants Bio-Rad sole discretion to determine its own reasonable efforts: "Commercially reasonable efforts shall be determined by Licensee in its reasonable discretion and may take into account Licensee's size, finances, and business plans and potential market demand." (Doc. No. 46-1 § 3.1.) Brandeis

5

fails even to acknowledge the Agreement's extremely deferential standard (*see* Doc. No. 51, 7–8) and alleges no facts that could plausibly suggest that Bio-Rad exercised its broad discretion unreasonably. Brandeis did not plead facts to suggest, for example, that Bio-Rad had an opportunity to develop the licensed IP but unreasonably failed to commercialize the licensed patents or that Bio-Rad's product development efforts as a whole were unreasonable. To the contrary, Brandeis admits that it lacks information sufficient to state a claim that Bio-Rad has acted unreasonably, claiming that it is unable to "verify" either way the reasonableness or accuracy of Bio-Rad's development reports. (*See* Doc. No. 51, 7–8.) While "verification" is not required at the pleading stage, Brandeis has failed even to plead facts sufficient to state a "plausible, not a merely conceivable, case for relief." *Waleyko v. Phelan*, 146 F.4th 89, 95 (1st Cir. 2025).

Brandeis's position is essentially that because there have not yet been sales of Licensed Products, Bio-Rad's efforts must not have been "commercially reasonable" under the Agreement. (Doc. No. 46 ¶ 74; Doc. No. 51, 7–8.) But as explained in Bio-Rad's opening brief (Doc. No. 48, 12), Brandeis cannot state a claim for breach simply by alleging that its desired outcome was not achieved. Where a contract requires "reasonable judgment" and the complaint fails to plead facts tending to show a failure to exercise reasonable judgment, dismissal is required. *See, e.g.*, *Tendyne Holdings, Inc. v. Abott Vascular, Inc.*, C.A. No. 18-1070-CFC, 2019 WL 2717857, at *3 (D. Del. June 28, 2019) (dismissing a claim for breach of a commercially reasonable efforts clause providing for defendant's "reasonable judgment" with regard to its efforts to achieve an "Earn-out Event 1" where plaintiff failed to "allege any facts tending to show how [defendant] may have failed to exercise reasonable judgment in connection with [its] failure to achieve Earn-out Event 1 or how [defendant] may have acted intentionally to interfere with the achievement of Earn-out Event 1"). Brandeis's failure to articulate any facts that could show a lack of reasonableness in

Bio-Rad's exercise of its broad discretion under the Agreement requires dismissal of Brandeis's claim under Section 3.1.  *See, e.g.*, *Talk Radio Network Enters. v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1206 (D. Or. 2017); *Tendyne*, 2019 WL 2717857, at *2.

> 5. <u>Brandeis's claims for breach of the limited audit provision of Section 4.4 must be dismissed as a matter of law</u>

Brandeis alleges that Section 4.4 of the License Agreement "gives Brandeis the unconditioned, unqualified right to review *any* Bio-Rad materials necessary to verify the accuracy of *any* report required by the License Agreement." (Doc. No. 51, 1 (emphasis in original).) Brandeis's interpretation of the Agreement is contrary to the plain reading of the provision and would require absurd results.

The entirety of Section 4 is directed to payment and reports for royalties owed under the Agreement.  Section 4.4, the fourth provision in Section 4 of the Agreement regarding "Payments and Reports" for Licensed Products, reads:

> Licensee shall keep complete and accurate records of its, and require its Sublicensees to keep accurate records of their, Net Sales under the licenses granted in this Agreement in sufficient detail to enable the royalties payable hereunder to be determined. Such records shall be retained for at least three (3) years following the end of the Accounting Period to which such records relate. Licensee agrees to permit Brandeis or its representatives, at Brandeis' expense and within 14 days written notice, to periodically examine its books, ledgers, and records during regular business hours for the purpose of and to the extent necessary to verify any report required under this Agreement.

(Doc. No. 46-1 § 4.4.)  Brandeis argues that this provision grants it the right to investigate any financial records and "all" technical documents for any Bio-Rad product of its choosing.  (*See* Doc. No. 51, 5–6; Doc. No. 46-4, Attachment 1.)  That reading cannot be squared with the plain text and context of Section 4.4.  The audit provision is not a stand-alone provision in the Agreement.  It appears only in Section 4.4 with the provisions requiring Bio-Rad to keep sales

7

records for Licensed Products. Brandeis's audit right is directly related and reciprocal to Bio-Rad's obligations to keep sales records necessary to verify royalty payments for Licensed Products. Nowhere does the provision contemplate that the right to audit "books, ledgers, and records" could extend to a right to audit non-financial, technical information regarding any Bio-Rad product regardless of whether it practices the licensed IP. Standard canons of interpretation require "records" to be limited to the more specific financial "books and ledgers" and documentation of similar scope; the inclusion of "records" in the audit provision does not blow open the audit right to encompass any other documentation of Brandeis's choosing. *See, e.g.*, *CustomMade Ventures Corp. v. Sentinel Ins. Co.*, No. CIV.A. 11-10365-DPW, 2012 WL 4321060, at *4–5 (D. Mass. Sept. 17, 2012) (principles of *ejusdem generis* ("things of the same kind") and *noscitur a sociis* ("it is known from its associates") "mean that a court should determine the meaning of a general term in the context of the other terms in the list"). If the parties had intended to include technical documents in the scope of any potential audit, they would have used language such as "technical specifications" or "product documentation." No such language appears, and nothing in the Agreement supports that the parties intended the audit right to be so expansive.

Nor does it make any commercial sense for Brandeis to have an unfettered right to investigate *any* Bio-Rad information under the Agreement. Brandeis licensed to Bio-Rad patents that Bio-Rad was not practicing in 2017 when Bio-Rad acquired RainDance and inherited the Agreement and has not practiced since, despite its best commercially reasonable efforts to do so. It is unreasonable to contend that in exchange for those license rights Brandeis received an "unconditioned, unqualified right to review any Bio-Rad materials" (Doc. No. 51, 1) of its choosing, including Bio-Rad's most confidential, proprietary technical and business information. The parties did not negotiate for such an absurd result, and Brandeis's claim based on that

unreasonable interpretation must be dismissed. *See Daniels v. Alvaria, Inc.*, No. 23-CV-10419-DJC, 2024 WL 758172, at *5 (D. Mass. Feb. 23, 2024) ("Interpretation of an unambiguous contract is a matter of law and may, therefore, be done at the motion to dismiss stage.").

Brandeis's request for a "declaration that Bio-Rad is required to provide access to its books, ledgers, and records for all potential Licensed Products" (Doc. No. 46 ¶ 86) should be dismissed not only because it is premised on an insupportable reading of Section 4.4, but also because it impermissibly broadens Section 4.4 in a second way, seeking to reach "all potential Licensed Products." As described in Bio-Rad's opening brief and above, the audit right provides Brandeis a means to verify the accuracy of Bio-Rad's royalty reports concerning Licensed Products; for example, to confirm once Bio-Rad begins selling Licensed Products that Bio-Rad accurately reported the number of Licensed Products sold and correctly calculated the royalties owed. It does not provide Brandeis the right to conduct a fishing expedition through Bio-Rad's confidential technical and business records to search for "potential Licensed Products."

### B.   Brandeis Fails to State a Claim For Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)

Brandeis's claim for breach of the implied covenant assumes that Bio-Rad has breached the provisions discussed above, and therefore fails for the same reasons: Brandeis fails to allege any facts that could make the underlying breach plausible. Brandeis's claim in Count III must be dismissed for the additional reason that Brandeis fails to plead facts that could state a plausible claim that Bio-Rad has "purposely conceal[ed]" (Doc. No. 51, 14) any of the alleged breaches.

### C.   Brandeis's Claim for Violation of M.G.L. Ch. 93A § 2 Fails as a Matter of Law (Count IV)

Brandeis argues that this count should survive dismissal because the Court should not resolve the "primarily and substantially" inquiry at this stage. But the law is clear that while the "primarily and substantially" inquiry is a "fact specific" inquiry, it is ultimately "a question of law

9

for the Court" that may be resolved at the motion to dismiss stage. *CrunchTime! Info. Sys., Inc. v. Frischs Restaurants, Inc.*, 768 F. Supp. 3d 183, 186 (D. Mass. 2025). Contrary to Brandeis's assertions (Doc. No. 51, 15), bare allegations of the Plaintiff's location in Massachusetts and alleged injury in Massachusetts are not sufficient to survive a motion to dismiss as a matter of law, and it is therefore appropriate for the Court to dismiss this claim at this stage. For example, in *CrunchTime!*, the Court dismissed a Chapter 93A claim where, despite plaintiff's allegations that defendant was Massachusetts-based and the parties' agreement was governed by Massachusetts law, "[n]othing in the complaint further elaborates on specific facts having occurred in, or being related to, Massachusetts." *Id.*, 186; *see also id.* (collecting District of Massachusetts decisions dismissing 93A claims on a similar basis). For the reasons described in Bio-Rad's opening brief, Brandeis's allegations as to Massachusetts-based conduct all fail. (Doc. No. 48, 19–20.)

Apart from the failure to meet the "primarily and substantially" prerequisite for a claim under 93A, Brandeis has also failed to state a claim for a violation of 93A because it has not pleaded "unfair or deceptive acts or practices." Brandeis argues that Bio-Rad "is liable for violation of ch. 93A for much of the same reasons that subject it to liability for breach of the implied covenant" and that Bio-Rad's "refusal to cooperate with Brandeis' audit request alone is enough for liability under ch. 93A." (Doc. No. 51, 14–15.) For the reasons described in Bio-Rad's opening brief and above, Bio-Rad's conduct has not been unfair or deceptive, and its refusal to turn over confidential documentation that Brandeis is not entitled to under the Agreement certainly does not rise to a violation of 93A. Accordingly, Count IV should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Bio-Rad respectfully requests the Court grant its Motion to Dismiss Plaintiff's First Amended Complaint.

10

Dated: January 5, 2026

Gerry Silver (*pro hac vice*)
*gsilver@sullivanlaw.com*
Ryan M. Rosenblatt (BBO #698490)
*rrosenblatt@sullivanlaw.com*
Erika J. Dennery (BBO #713005)
*edennery@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2800
(F) (617) 338-2880

Respectfully submitted,

/s/ *Elaine Herrmann Blais*

Elaine Herrmann Blais (BBO #656142)
Alexandra Lu (BBO #691114)
Emma Murray (BBO #713447)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1209
Fax: (617) 649-1466
eblais@goodwinlaw.com
alu@goodwinlaw.com
emurray@goodwinlaw.com

Christine Potkay (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Telephone.: (212) 813-8800
Facsimile: (212) 355-3333
Cpotkay@goodwinlaw.com

*Counsel for Defendant Bio-Rad Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above document was filed on January 5, 2026 through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: <i>/s/ Elaine Herrmann Blais</i><br>Elaine Herrmann Blais