**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Brandeis University,<br><br>Plaintiff,<br><br>v.<br><br>Bio-Rad Laboratories, Inc.<br><br>Defendant. | ) | Civil Action No. 1:25-CV-12780-AK |

**MEMORANDUM AND ORDER ON**
**MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**ANGEL KELLEY, D.J.**

Before the Court is Plaintiff Brandeis University's ("Plaintiff") Motion for Leave to File a Second Amended Complaint. [Dkt. 59]. Plaintiff seeks to add an incident of Defendant Bio-Rad Laboratories, Inc.'s ("Defendant") alleged breach of its agreement with the Plaintiff, and its accompanying factual allegations. Defendant opposes the motion in part. [Dkt. 62]. Defendant agrees to add the new alleged breach, but argues adding allegations to the already pleaded claims would be futile. The Court disagrees, and accordingly, for the reasons below, Plaintiff's Motion for Leave to File a Second Amended Complaint is **GRANTED**. As a result, Defendant's Motion to Dismiss [Dkt. 47] is **DENIED AS MOOT**.

## I. BACKGROUND

This action arises out of the license agreement ("Agreement") between Plaintiff and Defendant.[1] Under the Agreement, Plaintiff granted Defendant an exclusive license to certain of

[1] On December 22, 2011, Plaintiff executed the Agreement with RainDance Technologies, Inc ("RDT"). RDT was acquired by Defendant on about February 11, 2017. After RDT's acquisition, Defendant inherited the Agreement, and the parties amended the Agreement to substitute RDT.

its patents ("Licensed Patents")[2] and permitted Defendant to develop products therefrom ("Licensed Products").[3] In exchange, Defendant agreed to pay royalty fees on the sale of Licensed Products, sublicense the Licensed Patents, and to employ "commercially reasonable best efforts" to produce Licensed Products for commercial sales. [Dkt. 46-1 at § 3.1, 2.2].

Defendant agreed to annually report progress or lack thereof on commercialization of Licensed Patents ("Annual Reports"). [Id. at §§ 3.1, 3.2]. Defendant also agreed to report and account for its and its sublicensees' use or sales of Licensed Products. [Id. § 4.4, 4.5]. To verify reports, Plaintiff may, with a 14-days' notice, audit Defendant's books, ledgers, and records. [Id. § 4.4]. The parties shall inform each other, with reasonable promptness, when either party learns about any third parties' infringement. [Id. at § 6.1]. To settle any such dispute, Defendant must obtain Plaintiff's consent. [Id. at § 6.4].

Since entering the Agreement, Defendant did not pay any royalty fees, or report any sale of the Licensed Products, sublicensing, or any third-party's infringement, including any payments to settle such a dispute. In 2024, Plaintiff learned that Defendant markets certain products that use methods and structures similar to the Licensed Patents. Defendant allegedly avoided designating the Licensed Products to evade royalty payments. Defendant also invested in competing products even though producing the Licensed Products was commercially and technically feasible. Defendant, thus, allegedly did not exercise reasonable discretion, as Section 3.1 requires, to decide commercially reasonable best efforts to produce the Licensed Products.

---

[2] Plaintiff jointly owns U.S. Patent No. 8,592,221, with third-party President and Fellows of Harvard College, but solely holds all rights, "including filing, prosecution, maintenance, defense, enforcement, and licensing." [Dkt. 46 ¶ 10-11]. Plaintiff solely owns U.S. Patent No. 8,772,046.

[3] Under the Agreement, Licensed Products mean: "any composition or method, the practice, development, manufacture, use, offer for sale or sale of which absent the licenses granted herein, and only for so long as absent such licenses, would, in whole or in part, infringe a Valid Claim of any Patent Right in a territory in which a Valid Claim is enforceable." [Dkt. 46-1 at 2].

In 2024, Plaintiff also found that Defendant settled a dispute with 10X Genomics, Inc. ("10X Genomics") for infringement of the Licensed Patents. Under the settlement terms, Defendant granted 10X Genomics an option to obtain a sublicense for the Licensed Patents. In return, Defendant allegedly received consideration. Plaintiff was, however, uninvolved and unaware of this dispute. Plaintiff alleges this lack of involvement violates, among others, Sections 6.1, 6.3, and 6.4, which required Defendant to notify Plaintiff of the third-parties' infringement, obtain Plaintiff's consent before settlement, and share the proceeds.

Plaintiff, therefore, invoked its audit rights under the Agreement to verify the Annual Reports, which never disclosed Defendant's purported commercialization efforts or its litigation with 10X Genomics. Plaintiff notified Defendant, with a list of products of concern, and requested access to its records. Defendant, however, refused access. Plaintiff, thus, formally notified Defendant on November 21, 2024, of its material breaches of the Agreement under Section 9.1. On August 19, 2025, Plaintiff filed this action in Massachusetts Superior Court for Suffolk County, which Defendant removed to this Court on September 26, 2025.

On March 23, 2026, Plaintiff received from Defendant its correspondence with another third party, Quanterix, Inc. ("Quanterix"). Based on this new information, Plaintiff moved to file a Second Amended Complaint ("SAC"). Plaintiff primarily seeks two amendments. First, it adds a new breach, under Section 6.1, for Defendant's failure to notify Plaintiff with "reasonable promptness" about Quanterix's infringement of the Licensed Patents. This lack of timely notice and failure to take any action against Quanterix, allegedly deprived Plaintiff of its right to enforce Licensed Patents against Quanterix under Section 6.2. Defendant does not challenge this new cause of action. Second, SAC adds factual allegations to its already pleaded claims. Specifically, it alleges Defendant's use of Licensed Patents is like Quanterix's use, which

Defendant agrees infringes upon the Licensed Patents. Defendant opposes this addition, arguing such addition would be futile to Plaintiff's already pleaded claims of breach of the Agreement, breach of the covenants of good faith and fair dealing, and violations of Mass. Gen. Laws. Ch. 93A, § 2.

## II. LEGAL STANDARD

Once amended as of right, any pleading is amended only "with opposing party's written consent or the court's leave." Fed. R. Civ. Proc. 15(a)(2). Where the opposing party does not consent, "[t]he court should freely give leave when justice so requires." Id. Rule 15(a) reflects a "liberal amendment policy." O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004). Yet, the leave may be denied where the proposed amendment: (1) is unduly delayed, (2) is in bad faith or dilatory, (3) will cause undue prejudice, or (4) will be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Where, as here, futility is at issue, courts inquire whether "the pined-for amendment does not plead enough to make out a plausible claim for relief." HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 578 (1st Cir. 2014). To do so, courts "examine the totality of the circumstances [] to exercise its informed discretion in constructing a balance of pertinent considerations." Palmer v. Champion Mortg., 465 F. 3d 24, 30-31 (1st Cir. 2006). A proposed amendment is "not deemed futile as long as the . . . complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001); cf. Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 40 (1st Cir. 2022) ("A proposed amendment is futile if it is either frivolous or contains some fatal defect."). The futility is assessed with respect to the Rule 12(b)(6) pleadings standard. Id.

## III. DISCUSSION

Plaintiff argues the proposed SAC is not unduly delayed, prejudicial, made in bad faith, or futile. Meanwhile, Defendant opposes adding allegations at the proposed paragraphs 78, 117-118, 123, and 131-132, arguing such addition would be futile[4] to the claims for: (1) breach of the Agreement premised on Defendant's alleged practice of Licensed Patents, (2) breach of the implied covenants of good faith and fair dealing, and (3) violations of Mass. Gen. Laws. ch. 93A, § 2. The Court addresses each claim in turn, beginning with breach of the Agreement claims.

### A. Breach of the Agreement

As relevant to breach of the Agreement, Defendant opposes only the proposed paragraph 78,[5] arguing that it does not sufficiently allege that Defendant practices Licensed Patents, and accordingly has no obligations under the Agreement. The Court disagrees.

Plaintiff plausibly alleges Defendant used Licensed Patents. At the pleading stage, Plaintiff need not specify or map the technical similarities between the alleged infringing products and the Licensed Patents to show Defendant practices the Licensed Patents. See Progenics Pharms., Inc. v. MIM Software Inc., 762 F. Supp. 3d 100, 115 (D. Mass. 2025) (quoting Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp., 677 F. Supp. 3d 1079, 1084 (N.D. Cal. 2023) (A complaint need not "identify all allegedly infringing products . . . and map those products to patent claims.").

---

[4] Because Defendant does not allege undue delay, prejudice, or bad faith, the Court evaluates only the purported futility of the proposed amendments. Nonetheless, Plaintiff's proposed amendments are undisputedly based on the facts that Plaintiff discovered on March 23, 2026, refuting any delay on its part. Similarly, as the parties have not engaged in discovery yet, none of the proposed amendments would prejudice Defendant.

[5] Defendants do not oppose amendments to other paragraphs in the SAC. The proposed paragraph 78 reads as follows: Bio-Rad's letters to Quanterix also confirm that Bio-Rad viewed the Licensed IP as covering at least Quanterix's Simoa Bead Technology—the same Licensed IP that Bio-Rad claims in this litigation does not cover any of its own products. Bio-Rad cannot credibly assert that the Licensed IP covers Quanterix's products for purposes of licensing demands while simultaneously maintaining that similar or overlapping technology does not constitute Licensed Products for royalty purposes.

Here, Plaintiff alleges that Defendant's infringing products use the Licensed Patents in a "similar or overlapping manner" in which Quanterix uses the Licensed Patents—which even Defendant considers as constituting infringement. In support, Plaintiff specifies the products it deems infringing and also appends charts mapping technical similarities between Licensed Patents and Quanterix's products. This suffices at this stage. Plaintiff's proposed amendments are more than a general scenario which, if proven, would constitute a claim for relief. As a result, the Court allows Plaintiff to add the objected-to proposed paragraph 78.

**B. Implied Covenant of Good Faith and Fair Dealing**

"Under Massachusetts law, every contract implies good faith and fair dealing between the parties to it." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013) (cleaned up). That is, the parties agree to "remain faithful to the intended and agreed expectations" in their performance. Biltcliffe v. CitiMortgage, Inc., 952 F. Supp. 2d 371, 381 (D. Mass. 2013), aff'd, 772 F.3d 925 (1st Cir. 2014) (quoting Uno Rests., Inc. v. Boston Kenmore Realty Corp., 805 N.E.2d 957, 964 (2004)). "[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Drucker v. Roland Wm. Jutras Assocs., 348 N.E.2d 763, 765 (Mass. 1976). The covenant exists only where there is a valid contract. Von Papen v. Rubman, 18 F. Supp. 3d 77, 87 n. 8 (D. Mass. 2014).

Here, there is no dispute about the validity of the Agreement. The parties, therefore, were required to act in good faith, and deal fairly, in their respective performances, such that their conduct does not deprive either party of the benefits of the Agreement. Contrary to Defendant's argument, the proposed paragraphs 117 and 118 plausibly allege that Defendant's accused conduct—that is, withholding of notice to Plaintiff of Quanterix's infringement of the Licensed Patents—deprived Plaintiff of its right to enforce the Licensed Patents.

The paragraph 117, in relevant part, alleges that Defendant withheld its notice to Plaintiff of Quanterix's infringement for about seven and a half years. As a result, it deprived Plaintiff to enforce its Licensed Patents, and to recover damages in full given the patent damages are limited only to six years preceding the filing date of the complaint. Plaintiff is effectively deprived of recovering damages for about one and a half years. Relatedly, paragraph 118 alleges Defendant's withholding of notice shows its bad faith. The Quanterix correspondence indicates that Defendant knew of its obligations under the Agreement as it specifically held itself out as an exclusive licensee of the Licensed Patents, and submitted Annual Reports to Plaintiff. But still, it chose not to include Quanterix's infringement concerns as Section 6.1 requires.

These facts plausibly allege Defendant's withholding of notice, Plaintiff's alleged loss of recovery of patent damages for about one and a half years, and Defendant's lack of good faith in withholding the notice. Defendant's alleged conduct, thus, plausibly deprived Plaintiff to receive fruits of the Agreement. Accordingly, Plaintiff is allowed to add these allegations to paragraphs 117 and 118 for not being futile.

**C. Massachusetts General Law Chapter 93A, § 2**

Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws, ch. 93A § 2. As relevant here, there are two elements to it. First, the defendant's objected-to conduct must be "primarily and substantially within the commonwealth." Id. § 11. See also Measurement Specialties, Inc. v. Exergen Corp., 2026 WL 2350119, at *9 (D. Mass. 2026). Second, the defendant's conduct must be unfair or deceptive.

As to the geographic requirement, it is the defendant's burden to show accused conduct "did not occur primarily and substantially within [Massachusetts]." Mass. Gen. Laws ch. 93A, § 11. The courts inquire whether "the center of gravity" of circumstances that caused the claims is

"primarily and substantially within the Commonwealth." Kuwaiti Danish Comput. Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003). This is a "highly factual" inquiry and is thus "not generally the appropriate subject for a motion to dismiss." Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., 2015 WL 4467064, at *11 (D. Mass. 2015). At the motion to dismiss stage, if the plaintiff is in Massachusetts, and suffers injury here, it typically satisfies the geographic predicate. Jofran Sales, Inc. v. Watkins & Shepard Trucking, Inc., 216 F. Supp. 3d 206, 216 (D. Mass. 2016).

Here, the SAC plausibly alleges Defendant's objected-to conduct was primarily and substantially in Massachusetts. Plaintiff is a Massachusetts-based university and incurred the purported injury here. As alleged, Defendant was supposed to report commercialization efforts, enforcement actions against third parties, and make payments to Plaintiff in Massachusetts. Accordingly, at this stage, Plaintiff's present location and its place of injury satisfy the geographic predicate of Chapter 93A violations.

Turning to the substance, "unfair or deceptive conduct is best discerned from the circumstances of each case[,]" see Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 17 (1st Cir. 2021) (citation modified), and in determining what conduct "rises to the level of an unfair act or practice[,]" courts have "consistently" looked to:

> (1) whether the conduct is within 'at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers' or other businesses[.]

H1 Lincoln, Inc. v. South Washington Street, LLC, 179 N.E.3d 545, 557 (2022) (cleaned up).

The "'crucial factors' in an unfairness inquiry are 'the nature of [the] challenged conduct and [ ] the purpose and effect of that conduct.'" In re Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 184-85 (1st Cir. 2009) (cleaned up). Similarly, "an act or practice is

deceptive if it possesses a tendency to deceive and if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted." Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (citation modified).

Here, Plaintiff sufficiently alleges Defendant's accused conduct is "unfair or deceptive" under Mass. Gen. Laws, ch. 93A § 2. Although Defendant does not specify, it appears to argue that the proposed paragraphs 123 and 131-132 are factually insufficient to support Plaintiff's unfair or deceptive practices claim. These paragraphs allege Defendant leveraged its exclusive license under the Agreement to its commercial interests, while selectively evading its reporting, payment, and audit obligations to Plaintiff. These evasions, as alleged in proposed paragraphs, deprived Plaintiff, among other benefits, from seeking patent damages for a year and a half. These facts plausibly allege Defendant's accused conduct was unfair and deceptive under Mass. Gen. Laws, ch. 93A, § 2. Plaintiff is, thus, permitted to add paragraphs 123, and 131-132.

Because the proposed SAC plausibly alleges breach of the Agreement, breach of the covenants of good faith and fair dealing, and violations of Mass. Gen. Laws. ch. 93A, § 2, the Court allows Plaintiff to file the proposed SAC. As a result, Defendant's Motion to Dismiss is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's [Dkt. 59] Motion for Leave to File a Second Amended Complaint is **GRANTED**. Defendant's [Dkt. 47] Motion to Dismiss is **DENIED AS MOOT.**

**SO ORDERED.**

Dated: September 10, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge